Good morning, and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the circuit court judges. I hail from Alaska. I'm delighted to be in San Francisco today with my colleague, Judge Bea, who lives right here in the city, and Judge Johnstone, who's joining us from Montana. I have a little housekeeping work to do before we begin. We're cases that are submitted on the briefs and for which we will not hear argument. They are 22-16347, Sherita Reynolds v. Singh, 22-55807, Benitez v. Kijikazi, 22-908, Piero Soto v. Garland. The first case on the oral argument calendar today will be Bybee v. International Brotherhood of the Teamsters, 22-16280. If you give us just one minute, we'll be ready to stop shuffling papers and to hear your argument. I think we're all set. I'm going to shuffle for a moment to make sure. Can everyone hear me? Okay. Good morning, Your Honors, and may it please the Court. I'm Jane Mariani, and I'm here on behalf of the plaintiffs' appellants in this matter. I would like to reserve four minutes for rebuttal. You certainly may. Just watch the clock, please. Thank you. We are here today because the district court made reversible errors in erroneously dismissing all of appellants' claims with upon defendants' motions to dismiss. As the basis for dismissal in this matter, the district court found that the complaint failed to state any timely claim for relief over which the district court had jurisdiction. Appellants submit that the complaint plausibly alleges claims over which the district court has jurisdiction and were timely. In advance of today's argument, this Court asked the parties to address three specific concerns to the issue of whether the district court erred in dismissing plaintiffs' claim under the Railway Labor Act Section 184, assuming that plaintiffs have a right to arbitrate without union representation. If it pleases the Court, I will turn to those arguments. The first concern was the applicable statute of limitations for plaintiffs to file a grievance with their union for breach of the collective bargaining agreement. Generally, those limitations are found in the collective bargaining agreement of the parties, that is of the employer and the union and the employees. In this particular case, they are specifically located in Articles 18 through 20 with a few miscellaneous provisions throughout. Those provisions provide that 30 days within reasonable knowledge to discuss with the union. That probably is the crux of the issue, what is reasonable knowledge and what constitutes discussing it with the union timely. Following that discussion, if the discussion yields a grievance or is meritorious, then the grievance is reduced to a writing. In this particular case, and I will say not in the record below, I would like to say at the outset that this was a motion to dismiss our complaint on 12b6 and 12b1. Plaintiffs did not plead every single known fact. We pled facts that we thought plausibly alleged our claims. For this particular issue, the grievance process used to be a public process. The grievant would talk with their supervisor, talk with the union, they would go to a place where there was a form, they would fill out the form, they would go back and then it would be signed and submitted. The process was changed. The grievance sort of ended up filing those grievances, but they still had the discussions and they still were required to have the discussions. One of the appellants in this case was a shop steward at the time that these initial grievances were filed. As a shop steward, he attended weekly shop steward meetings and one of their functions was to discuss problems that were occurring with the employer and with the contract. If they deemed as a group that that merited a grievance, one of 10 or 15 would fill out the grievance and file the grievance. We refer to that in this case as the former mechanic because the person was a named plaintiff in this case and unfortunately was removed for medical purposes. His name on that grievance is significant in that it is his name, but he was represented. Mr. Marion, I'm having trouble following you because this is an appeal for my motion to dismiss under 12B1 and 12B6 and I think it's based on the basis that your own complaint states facts which are not in dispute, which show that the statute of limitations bars your claim. Now, you're giving me a bunch of background in this case, a bunch of factual matter. The issue is not the background, the issue is not the factual matter, the issue is not the history of the relationship, etc. The issue is what does the complaint say? Why do you say that your complaint does not plead you out of this case? If I may, yes. To answer your question, thank you. Because the court made assumption, first of all the court did not construe those allegations in our favor and accept them as true. The court put its own perception, for example, if I could give you an example, the court cites August 2017 as a date that something happened, that they say triggers or accrues or that it's a significant material event that causes us to be time barred. However, that date, when you read the actual letter, that is . . . I'm not interested in the actual letter. I'm interested in your complaint. What about Judge Donato's reading of your complaint was in error? Judge Donato did not apply the correct accrual and tolling standards to the facts. Where do you allege . . . Let me do this. He cited the Second Amendment complaint at 325, the paragraph starting there. Let me just ask you, where do you allege knowledge for the grievance, that you first got the grievance within a statute of limitations period, or became aware of the matter to be grieved within the statute of limitations period? Can you point to a paragraph in the complaint? The first time is August of 2016 when the tentative collective bargaining agreement was presented to the shop stewards. That's what the district court pointed to. Right. There are two August dates. I apologize, Your Honor. August and October of 2016 is what he thinks you alleged. How is that timely? It's in August 2017. There's another August date in the complaint. That's timely because, first of all, there was . . . Did you say 2016 or 2017? Yeah, there's both. Judge Christin is asking about 2016. 2016, it arises because that tentative agreement shows for the first time that United is not going to honor the express terms of the LOA that are contained in the then current and in force collective bargaining agreement. As I was, I'm sorry, unfortunately, long-windedly explaining, it was at a shop steward meeting with other union officials that they all said, we should grieve this now, which they did timely. They filed a grievance within the 30 days provided for in the collective bargaining agreement. It was signed, and it was filed with United within the time frames. After that point, the grievance lose control, if you will, of what happens next. The union does not, is not forthcoming, and they don't know. The process is hidden from them after that. They don't attend a second step. Your complaint includes allegations that participants were asking over and over again what's going to happen, what's going to happen, and that they were getting shut down and told it's not going to happen, it's not going to go forward, and then, of course, there are a few written responses as well. What about that? Yeah, so August 2016 starts the grievance process. There are four steps in the process, but the second step process, it's important to note. I apologize, but it is important to note that the grievance, per the collective bargaining agreement, have a right to participate and be part of this process, and they kept track. You've got a statute of limitations that was ticking, and that was known, and you seem to be relying in your briefing on the Reardon confirmation, which you call confirmation in 2018. Correct. By then, the statute of limitations had expired, so what is your very best shot at this? Okay. While the grievance is pending, the statute of limitations is told. The grievance was pending at least until August of 2017 when an attorney for the Teamsters, not the designated grievance person at the National, not anybody described in the collective bargaining agreement, when that attorney sent a letter in response to my client asking what was happening because my client was actually trying to communicate with the National about the process that is dictated in the Teamsters Constitution and his local bylaws, how he was supposed to appeal this previous decision. In that letter, the gentleman is Nick Manicone. He specifically says to my client that Mr. Reardon goes on, the process that he describes in this letter did not give my client any knowledge that, one, he spoke for the National because this is not the process. The grievance process, let's say the grievance appeal process under the Teamster Constitution, literally culminates with a vote at a convention. There are forms, there's a process. They would not let them invoke the process. Mr. Manicone, I don't know what role he played, but my client – So are you relying on futility? Are you relying on – I'm saying that the claims did not accrue. So even if we use Judge Donato's reasoning that August 20 of 17, the claim, let's say, would accrue. My clients, though, were still exhausting their intra-union remedies. This is not a final decision of no arbitration. So therefore, regardless, my client, he still tried to complete the process with United. They did research on their own because what was extraordinary here is that none of the normal processes were filed at all in any step of this. So they sent a letter to United within that period asking them to initiate the arbitration process, which, again, until the employer refuses to arbitrate and the union closes the intra-union remedy, the statute of limitations hasn't accrued. So your position is that Mr. Manicone's letter did not trigger the right to sue within six months? Yes, Your Honor, I'm not sure on that date. But in January, my clients still within – even if it did, even if it did – my clients sent a letter to United to confirm that they would get their refusal. You need both. And in January, in the time period, United responded, we don't know what you're talking about. We've never seen these grievances. The February letter from Mr. Reardon, I have no idea what you're talking about. Send this back to me. They would learn later – well, anyway, so they did. They responded with the documents and the information necessary. And then Mr. Manicone, in a letter dated May 1st, they received on the 4th, 5th, at least these San Francisco plaintiffs. In that letter, he also does not give the unequivocal express refusal to arbitrate. He simply says the union told us not to do this. Well, and I want to add on top of this, we are hyper-focused on these San Francisco plaintiffs. There were other plaintiffs, you know, joined this lawsuit whose claims have never accrued. Ms. Sally Dill in Chicago, the day before she filed and joined this lawsuit in February of 2019, asked her union representation, what is the status of my – the exact status of my grievance. They said it's still open, everything is told you, nothing has happened. Similar. You're down to two and a half minutes. Do you want to reserve that time? I'll reserve it. Sorry. Chris Hollinger on behalf of United Airlines, United Airlines Holdings, Inc. and United Airlines Administrative Committee. I had originally planned to spend one half of the allotted time for the appellee's side, but I guess I will spend the whole time. The first topic that you raised in your order, which was discussed a little bit, most of the time previously, regarding the statute of limitations for filing a grievance with the union. Now, just to be clear, it is, as counsel mentioned, it's – now, this is to file the grievance. What, you know, the six-month statute of limitations that we've been talking about, that typically would be the statute of limitations for the breach of duty of representation claim against the union. The period to file the grievance is set forth in Article 19B.1 of the Collective Bargaining Agreement. That's SCR 54. And the requirement is for the employee to first have a conference, an informal conference, with the company supervisor, along with a union representative. And to do that within 30 days after the employee or his representative could reasonably have knowledge of the incident upon which the complaint is based. So that's the contractual time limit. And courts recognize those time limits are, you know, binding and enforceable, even though they're not a statute, you know, not a legislative thing. Just so the Court is clear, the grievances that were of the Collective Bargaining Agreement occurred. And those times of the alleged occurrence were approximately four years before the date the grievances were filed. Is that alleged in the Second Amended Complaint? It is a combination of the allegations in the complaint and documents which are in the record, which were submitted below, because this was also a Rule 12b.1. And I give the record citations. Counsel had mentioned Plaintiff Byer, who originally was the lead name Plaintiff. His grievance was filed on September 1, 2016. And in that grievance, he alleged the first violation occurred on November 30, 2011. And that's Volume 9 ER 1021. Give me that again. Volume 9 ER 1021. The other grievances that have been filed in this case by other plaintiffs have similar times when the grievances were filed and identify similar dates when the alleged first violation occurred. I can provide those additional ones if you would like the I've got them. You can use your time as you want to use your time. So that's just to be abundantly clear. The grievances were not timely filed by any stretch of the imagination. And that is something which was identified both by the company in responding to the grievance and by the union's lawyer, outside lawyer, Mr. Manicone, when he was identifying reasons why the grievances should not be taken to arbitration. So to be clear, opposing counsel argues that the grievances were told the statute of limitations. What I'm hearing you argue consistent with your briefing is that the statute of limitations had expired before they were filed. The contractual time limit in the collective bargaining agreement for filing a grievance had expired. Yes, forgive my shorthand. The 30-day period. Yes. All right. The second topic which the court identified was what is the statute of limitations, the applicable statute of limitations for plaintiffs to compel arbitration with their employer after their union withdrew their grievance, which was not something that counsel raised. The applicable statute of limitations is six months, which is a common statute of limitations for claims under the labor statutes. The Ninth Circuit itself has not specifically addressed the question. It has in the context of the Labor Management Relations Act. For that, you can look at United Steelworkers of America against Retirement Income Plan, 512 F. 3rd, 555, and Local Joint Executive Board v. Exber, 994 F. 2nd, 674. Those are cases where the Ninth Circuit held a six-month statute of limitations applies to a motion to compel arbitration under the National Labor Relations Act slash Section 301 of the Labor Management Relations Act. The Ninth Circuit itself has applied the six-month statute of limitations under the Railway Labor Act claims, but not yet in a case involving the motion to compel arbitration. That would be International Association of Machinists against Aloha Airlines, 790 F. 2nd, 727. Additionally, I will point out that the only circuit court decision of which we are aware that has addressed the statute of limitations for a motion to compel under the Railway Labor Act is from the Second Circuit. That case is Atlas Air against International Brotherhood of Teamsters, 943 F. 3rd, 568, Second Circuit 219, 2019, and in that case, the court held the statute of limitations was six months. And there's no logical reason, we submit, why the statute of limitations should be different as between the two statutes, especially given one of the stated purposes of the Railway Labor Act, which is important for overall consideration of what's going on in this case, is that one of the purposes of the Railway Labor Act is, quote, to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay rules or working conditions. That's 45 U.S.C. section 151, little a, paragraph 5. And if anything has happened in this litigation, it is not the prompt and orderly attempted settlement of the so-called minor disputes. This is a case where the plaintiffs are relying on a letter of agreement that was negotiated in 2005. They claim that an event which took place in 2010 triggered their entitlement to some additional retirement benefits. They themselves acknowledge that as of 2011, the alleged contractual violation was occurring. They waited approximately five years before filing grievances in late 2016 and then took a long additional period of time to eventually come to court. The third topic which the court in its order addressed, asked us to address, the time at which plaintiffs' putative right to arbitrate accrued in this case. The putative right to arbitrate is, we submit, it's different than when did your cause of action for motion to compel arbitration accrue. There are differences between those two formulations. I'm going to assume the initial interpretation, and I'll also address the second interpretation. Under the collective bargaining agreement, there's a series of steps for filing the grievance, having it initially heard, and appeal, which we call step two. And if the result is unsatisfactory at step two, you go to step three. Step three is what's called the joint board of adjustment. It is a form of arbitration tribunal comprised of two company and two union members. And if the decision of the joint board of adjustment is unsatisfactory or there's a deadlock, the union, according to the collective bargaining agreement, may appeal to the board of arbitration, which is one person company, one person union, one neutral arbitrator. But the right to initiate the arbitration process accrues when the decision at step two, the immediately preceding step, you've received a decision that you believe is unsatisfactory. At that point is when you have a right to initiate the process that could culminate in arbitration. So, and that is when if the company had, you know, as this case occurred, the company denied the grievance at step two, initially the union appealed at step three, and then withdrew the grievance with prejudice and essentially went back to step two. But the union would have had to have done that under the terms of the collective bargaining agreement within 14 days of the receipt of the decision at step two. So in other words, you go to step two. We understand. Right. Okay. And that's, I apologize. And that's. We're just waiting for you to say 14 days. Okay. It's a big lead up. I'm sorry. That's okay. The, now in this case, after the union withdrew the grievance with prejudice, essentially it went back to step two. You know, the thing that's remaining is what the company had done. Once the plaintiffs, the individual plaintiffs were notified that this is what the union had done. And if you assume, notwithstanding the terms of the collective bargaining agreement, they had the right to pursue arbitration on their own, it was incumbent on them to request arbitration. Please wait one minute. I'm sorry. Back. Go right ahead, counsel. All right. When we were, we last left off, the, our position is that the individual appellants, if they do have a right to invoke the arbitration process, had to have done so within 14 days of learning that the union had withdrawn their grievances with prejudice. Right. And at least one of them says he didn't know that. He didn't hear that. The, well, just in terms of the complaint, to be clear, they, they alleged, most of them, they alleged that they learned in August of 2017. Right. I've got that. And, um, with respect to the two, one I believe is a Dill and one is Drumheller, our position is that the initial grievance filed in this case was what is called a group grievance. Essentially, it's a class action. Uh, it's, it's a process that is authorized by the collective bargaining agreement where the, the facts and the issue is the same for a group of people and are. What if we disagree with you on that point? Then what happens? Or what if we think we can't resolve that here at the, at this stage of the litigation? Then what is your position? Well, if, if the out, if the answer to that question is to, you know, uh, regulates your decision making process, then this court does not have, nor does the district court have jurisdiction to decide the merits of whether or not under the collective bargaining agreement, uh, this was a group grievance, how that interacts with the fact that the original grievances, which subsumed, uh, Dill and Drumheller's grievance and which were handled in the same way, uh, how the, the failure to timely file the first grievance affects the other grievances. And that would be what's called a minor dispute subject to the jurisdiction of the arbitration panel to determine. So on the merits, you'd say, in other words, if we couldn't tell that that was, the grievances were all untimely, I think what you're telling me is that they fail on the merits because there are minor disputes. Is that what you're saying? The, they would, the plaintiffs would lose on the merits because the underlying substantive question of whether or not the company breached the collective bargaining agreement through the pension practices. That is a minor dispute subject to the exclusive jurisdiction of the grievance procedure. Mr. Hollinger, I, I wanted to, um, continue to walk through the, the CBA. So did you say the, the CBA speaks then to the individual employees, um, timeline in terms of when they must file? Um, I'm looking at the second step and it talks mostly about the union representative. So what are we supposed to do with the, what's, where is the individual's timeline? Well, the, the, the individual doesn't have a specific timeline in the subsequent steps because the collective bargaining agreement by its own terms makes the union the, uh, responsible party for that. If in fact the individuals have rights to process to step three, then we submit they must be governed by the same time limits that are contained in the collective bargaining agreement for the union. Why would not the, um, RLA time limits then apply if the, if that's where their right is accruing to pursue individual claims? If the question is the, the claim they have brought to compel arbitration here, that's a separate question than the preceding steps and whether their right to accrue, their right to seek arbitration had expired before they even tried to invoke the process. Because in this case, they learned in August of 2017, they had two weeks to tell the company they want to go to arbitration. Uh, they did not even request until January. You said they learned in August of 2017, what did they learn? They learned the union had withdrawn their grievance with prejudice. And is that pleaded in the complaint? Paragraph 409 of the SAC. For Bayer, it's 376. Paragraph 376. Charitably, if you assume August 31 is when they learned, they waited until, um, January to even request arbitration and by then their right had expired. The, um, on the motion to compel arbitration, I'll just quickly say, uh, clearly the motion accrued when the union told them their case has been withdrawn. That's when the six-month statute of limitations for motion to compel began to run. Even if you assume the period was told during the time the company was considering their request to go to arbitration and you take that period out, they still waited more than six months to file the lawsuit. And the last thing I would just say is, uh, their claim under the section 204, the individual right to arbitration, if they have such a right, the remedy is to go to arbitration, not to have a breach of contract lawsuit in federal court, even though the plaintiffs themselves have never requested arbitration in this case. Thank you very much. Thank you. And, and, and thank you for tolerating our interruption. We'll put two minutes on the clock. Oh, no, you have two and a half minutes. You're in good shape. Come back. Come right on up. Okay. I will try to speak enough so that it's recorded, but I do want to hit on some big points. Okay. First of all, the process that my friends on the other side described is inaccurate, entirely inaccurate, and not based on. The second step is still nothing has been closed, nothing has been decided, everything is told. It is after that third step, that joint board of adjustment, that a grievant typically gets a letter. In this case, only one person received that letter ever. That was Mr. Byer. Plaintiff Dill never received a letter, was expressly told by her union, everything is going along. Okay. The second point I'd like to make is that the key in the, in the contract and in the case law is reasonable knowledge. When would they have reasonable knowledge that something has happened? That meeting in August that I painfully described to you in too much detail was when that was revealed to them. You're not going to get this, this, you will not get these benefits, you will not get this vote. And so that's when this came up. Yes, they wrote in the grievance because they discovered this at that meeting in August of 2016. Mr. Scholz discovered in September of 2016, because there was an arbitration for the pilots on these same agreements, that there had been this problem with the profit sharing issue in that same agreement, in that same LOA. He filed a grievance immediately on that issue. He was also told this is being reviewed. He only learned of that in September of 2016. None of these plaintiffs or any of their colleagues had any idea what was happening. The memo that was released by the Teamsters was very revealing in that it admitted several things. It admitted that in December of 2010, United and the Teamsters got together and said, we are not going to enforce the contract. We are not going to give them these rights. United had a concern about their tax consequences or some other thing. We don't know. We weren't a party to that. We learned of it then in March. So I don't want to waste all my time. The LOA in particular also, it waives the statute of limitations. So any problem that you would have under that part of the contract, you could bring a grievance at any time. The PBGC brought a grievance four years later for $400 million, which United paid. As far as a lack of jurisdiction, we submit that the Railway Labor Act – oh, I see my time is up. No, you're fine. Go right ahead, please. I apologize. Take another minute. That the Railway Labor Act permits them to be a part of this process and to take over at the point where the union might decide for obvious reasons. Maybe they don't want to expend the resources, they're overburdened, but the plaintiff believes in the merits. You cannot look at this LOA and think that these grievances don't have merit. But the bigger and more important issue here is this was motion to dismiss. These plaintiffs plausibly stated claims that should be allowed to be fleshed out in discovery and at summary judgment or trial, but they deserve a hearing on the merits. They have alleged enough. I'll admit the complaint is not the most clear and perhaps not the shortest. But it does put the facts in there as they understood them to be. Much of what has happened has been withheld from them, which is, again, why discovery or even the basic initial disclosures is crucial. The paperwork that evidences what the union and the company did was not provided to these plaintiffs until after they filed the Second Amendment complaint and after discovery disputes. They deserve a chance to have this heard on the merits. Because they have pled plausible claims that there is a breach. You're well over your time. Okay, sorry. So thank you for your advocacy. We'll take it under advisement. Thank you all. And we'll take the case under advisement and we'll go to the next case on the calendar.
judges: BEA, CHRISTEN, JOHNSTONE